**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT KNOXVILLE**

**DECEMBER SESSION, 1997**

FILED

March 23, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | **)** | **C.C.A. NO. 03C01-9706-CR-00232** |
| | **)** | |
| Appellee, | **)** | |
| | **)** | |
| | **)** | **UNION COUNTY** |
| **VS.** | **)** | |
| | **)** | **HON. LEE ASBURY** |
| **ROBERT H. McCURDY,** | **)** | **JUDGE** |
| | **)** | |
| Appellant. | **)** | (Aggravated Sexual Battery) |

**ON APPEAL FROM THE JUDGMENT OF THE
CRIMINAL COURT OF UNION COUNTY**

<u>FOR THE APPELLANT:</u>

CHARLIE ALLEN
P.O. Box 5027
Oneida, TN 37841

<u>FOR THE APPELLEE:</u>

JOHN KNOX WALKUP
Attorney General and Reporter

TIMOTHY F. BEHAN
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

WILLIAM PAUL PHILLIPS
District Attorney General

E. SHAYNE SEXTON
Assistant District Attorney General
P.O. Box 323
Jacksboro, TN 37757

OPINION FILED _____

AFFIRMED AS MODIFIED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Robert H. McCurdy, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. He was convicted by a Union County jury of two counts of aggravated sexual battery and two counts of contributing to the delinquency of a minor. He was sentenced as a standard, Range I offender to consecutive sentences of eight years for each count of aggravated sexual battery. The sentences for contributing to the delinquency of a minor were ordered to run concurrently with the aggravated sexual battery sentences. The Defendant raises three issues in this appeal: (1) That the trial court erred by failing to properly charge the jury regarding possible sentences or to charge the jury that the Defendant would be required to serve one hundred percent of his sentences for aggravated sexual battery; (2) that the trial court erred by ruling that Tennessee Code Annotated section 40-35-201 is unconstitutional; and (3) that the trial court erred by ordering the aggravated sexual battery sentences to be served consecutively. We affirm the Defendant's convictions. We reverse the trial court's finding that the sentences should be served consecutively and remand for the entry of an order consistent with this opinion.

On September 29, 1995, in Maynardville, Tennessee, N.M., age 9, and C.M., age 11[1], were walking together after school. They were heading to a quarry to play when the Defendant, who was fifty-eight years old, called to them from his auto repair garage. N.M. lived just up the road from the garage in

---

[1] It is the policy of this Court to refrain from using the full names of victims of child sex abuse.

Welch's trailer court and knew the Defendant as a family friend. C.M. did not know the Defendant. The girls went over to the Defendant to talk. C.M. asked him if he would buy them a pack of cigarettes. He agreed and took them to a convenience store in "Halls", rather than the Pilot store in Maynardville because N.M.'s mother worked there. They returned to the garage for a couple of hours and smoked cigarettes. The Defendant did not smoke. N.M. told her mother that they had gone to the Defendant's garage but not that he bought them cigarettes.

The girls went back to the garage the next day, which was a Saturday. They smoked cigarettes and drank wine coolers. The girls asked to do odd jobs to earn some money and the Defendant let them sweep the garage and clean out his refrigerator. He gave each girl $20. He also offered them $100 as a Christmas present if they would install insulation in the garage. The Defendant also lived in a room in the garage.

On Saturday or Sunday, the Defendant began asking questions of a sexual nature, stating that a past girlfriend was a hooker. He asked the girls whether they had had sex and whether they had pubic hair. N.M. became somewhat scared, but the two girls returned on Sunday. They smoked and drank wine coolers. The girls went to the garage on Monday after school. The Defendant asked the girls whether they knew how to "jack off" and told them they were going to learn. He locked the doors and laid on the bed in his living quarters. C.M. noticed a shotgun by the bed. The Defendant pulled down his pants, first demonstrated, then had the girls massage his penis and testicles. C.M. first asked if they could wear socks on their hands and the Defendant provided socks from a bag on the floor. The girls "switched" at some point between who

-3-

masturbated the Defendant's penis and his testicles. They stopped after they saw "white stuff" come out of the Defendant's penis. The Defendant threatened the girls, stating that he would go to jail, the girls would go to juvenile and their mothers would go to jail, and that he would come back and kill them. After this, the girls went to their respective homes, but neither told their families.

The girls returned the following Thursday to get a notepad that N.M. had left at the garage. They asked the Defendant to get some cigarettes and he complied. However, he locked the girls in the garage while he went to the store. C.M.'s mother and brother, Eric, arrived at the garage looking for her and banged on the door. The girls remained quiet because they were scared. As C.M's mother was leaving, the Defendant pulled up. He unlocked the door, went in, told the girls to hide the wine coolers and cigarettes, and then the girls came out of the garage. Another one of C.M.'s brothers, David, and her sister-in-law also arrived. C.M.'s brother David smelled alcohol and cigarettes on her breath. They left and the girls admitted to the cigarettes and wine coolers. David and C.M.'s mother returned to the garage about twenty minutes later and asked to look around. David found cigarettes hidden under the bed covers.

The Defendant admitted that he had bought cigarettes and Mountain Dews for the girls, but denied buying them any wine coolers. The Defendant denied that he engaged in any conversation of a sexual nature or any acts of a sexual nature. He testified that he locked the girls in the garage because they asked him to. The jury convicted the Defendant of two counts of contributing to the delinquency of a minor and two counts of aggravated sexual battery.

As his first issue, the Defendant contends that the trial court erred by refusing to charge the portion of Tennessee Code Annotated section 40-35-201 regarding release eligibility percentages. The Defendant requested that the trial court charge the jury and that counsel be permitted to argue in his closing statement that, if convicted, he would have to serve one hundred percent (100%) of his sentences for aggravated sexual battery and seventy-five percent (75%) of his sentences for contributing to the delinquency of a minor. See Tenn. Code Ann. § 40-35-501(i)(2)(H). The trial court refused to charge the jury regarding Tennessee Code Annotated section 40-35-201(b), which states:

> (b)(1) In all contested criminal cases, except for capital crimes which are governed by the procedures contained in §§ 39-13-204 and 39-13-205, upon the motion of either party, filed with the court prior to the selection of the jury, the court shall charge the possible penalties for the offense charged and all lesser included offenses.
>
> (2)(A)(i) When a charge as to possible penalties has been requested pursuant to subdivision (b)(1), the judge shall also include in the instructions for the jury to weigh and consider the meaning of a sentence of imprisonment for the offense charged and any lesser included offenses. Such instruction shall include an approximate calculation of the minimum number of years a person sentenced to imprisonment for the offense charged and lesser included offenses must serve before reaching such person's earliest release eligibility date. Such calculation shall include such factors as the release eligibility percentage established by § 40-35-501, maximum and minimum sentence reduction credits authorized by § 41-21-236 and the governor's power to reduce prison overcrowding pursuant to title 41, chapter 1, part 5, if applicable.

Our supreme court has determined that, rather than a constitutional right, a jury charge concerning the range of punishment is a statutory right that a Defendant may invoke. State v. Cook, 816 S.W.2d 322, 326 (Tenn. 1991). The court's holding was based on a prior wording of Tennessee Code Annotated section 40-35-201(b) regarding the range of punishment, before it was amended in 1994 as part of a truth in sentencing initiative. That amendment resulted in its

current form, which contains a provision requiring trial courts to charge release eligibility percentages. According to Cook, any error by the trial court in refusing to instruct the jury is governed by Rule 52(a) of the Tennessee Rules of Criminal Procedure and Rule 36(b) of the Tennessee Rules of Appellate Procedure. Rule 52(a) provides that "[n]o judgment of conviction shall be reversed on appeal except for errors which affirmatively appear to have affected the result of the trial on the merits." Tenn. R. Crim. P. 52(a). Rule 36(b) states that: "[a] final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36(b).

Our supreme court has sanctioned the statutory right of a defendant to request that the jury be informed of the range of punishment applicable to a crime: "Apparently the Legislature desired to give those charged with crimes the option of making certain that the jury knew the punitive consequences of guilty verdicts in the cases under consideration, and this court respects the right of the Legislature to do so." Cook, 816 S.W.2d at 326-27.

On this basis, we must conclude that the trial court erred by refusing to grant the statutory right to charge the jury as the Defendant requested. However, we conclude that this error by the trial court did not affect the judgment in a way that prejudiced the judicial process. Apparently, no lesser included offenses were charged and the jury was instructed only on aggravated sexual battery and contributing to the delinquency of a minor. In Cook, the jury was informed of the wrong sentence ranges when lesser included offenses were available. Id. at 324.

The defendant argued that the jury could have exercised discretion and convicted him of the lesser included offenses. Id. The State contended that errors in instruction as to sentencing did not constitute reversible error because such matters were irrelevant to the determination of guilt or innocence. Id. at 325. The supreme court found this to be reversible error. Id. at 327. Here, the jury was properly instructed regarding the sentence ranges for the charged offenses. However, the jury was only presented with the option to convict the Defendant of the charged offenses or to acquit him. There was strong evidence of the Defendant's guilt and there is nothing in the record that suggests the jury's knowledge of the release eligibility dates for the offenses would have compelled them to consider acquittal. See State v. Winford Lee Pipkin, C.C.A. No. 01C01-9605-CR-00210, Davidson County (Tenn. Crim. App., Nashville, Dec. 4, 1997). As a result, we cannot conclude that the failure of the trial court to charge the jury that the Defendant was required to serve his entire sentence affirmatively affected the results of the trial such that prejudice to the judicial process occurred.

As his next issue, the Defendant argues that the trial court erred by ruling that Tennessee Code Annotated section 40-35-201 is unconstitutional. During the hearing on the motion for new trial, defense counsel argued that the trial court was required to instruct the jury that the Defendant was required to serve his entire sentence. The trial judge ruled that "I don't think the Legislature can tell the Court what to do. And I will put in the record in this case, to the extent they are attempting to do that, that that is unconstitutional in the opinion of the Court."

We recognize that the question of the constitutionality of Tennessee Code Annotated section 40-35-201, as amended, remains an unsettled issue in this Court. See State v. Jerry Ray Cooper, C.C.A. No. 01C01-9504-CC-00150, Lincoln County (Tenn. Crim. App., Nashville, Nov. 17, 1997)(principal opinion with two concurring opinions); State v. Dwjuan L. Bradford, C.C.A. No. 01C01-9607-CR-00294, Davidson County (Tenn. Crim. App., Nashville, Sept. 30, 1997); State v. Curtis Lee Majors, C.C.A. No. 01C01-9602-CR-00076, Davidson County (Tenn. Crim. App., Nashville, July 30, 1997); State v. Howard E. King, C.C.A. No. 02C01-9601-CR-00032, Shelby County (Tenn. Crim. App., Jackson, Oct. 22, 1996) perm. to appeal granted, (Tenn., Mar. 10, 1997); see also Farris v. State, 535 S.W.2d 608 (Tenn. 1976).

However, we cannot join the trial court's conclusion that the statute is unconstitutional on the grounds that it violates the separation of powers doctrine. Some functions of the three departments of state government are necessarily overlapping and interdependent. We believe this is particularly true in our criminal justice system. See, e.g., Lavon v. State, 586 S.W.2d 112, 115 (Tenn. 1979); Underwood v. State, 529 S.W.2d 45, 47 (Tenn. 1975); Woods v. State, 130 Tenn. 100, 169 S.W. 558 (1914). We find Cook to be instructive on this issue:

> The Legislature, in its wisdom, certainly has the right and power to direct the judicial process. They have said that where a defendant wants his trial jury to know the range of possible punishments resulting from convictions that he is entitled to have that information conveyed to the jury. To deny this defendant that statutory right constitutes prejudice to the judicial process, rendering the error reversible under Rule 36(b) T.R.A.P.

Cook, 816 S.W.2d at 327. With this considered, we conclude that section 40-35-201 is not unconstitutional based on a violation of the doctrine of separation of powers.

In his final issue, the Defendant argues that the trial court erred by imposing consecutive sentences for aggravated sexual battery. When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and

that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

At the sentencing hearing in this case, the State argued for consecutive sentences because the Defendant committed two child sex abuse offenses pursuant to the following:

> (b) The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:
> . . .
> The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

Tenn. Code Ann. § 40-35-115(b)(5). The trial court imposed consecutive sentences without explanation. The State concedes that the trial court did not comply with the sentencing guidelines, which merits a *de novo* review without the presumption of correctness. Nevertheless, the State argues that the record supports the imposition of consecutive sentences based on subsection 115(b)(5). The State points out that the victims were not just minors, but very young girls, that the Defendant encouraged them with alcohol and cigarettes, and that he threatened to kill them.

However, although the conduct of this fifty-eight year old man was reprehensible, and while not disregarding the seriousness of crimes of this nature, we believe the circumstances in this case militate against the application of subsection 115(b)(5). There was no significant time span of undetected sexual

activity, the nature of the criminal conduct was nonaggravated, and the extent of residual damage to the victim caused by the conduct was not demonstrated by evidence presented at trial. The Defendant correctly notes that cases in which consecutive sentencing has been upheld, the nature of the sexual abuse has generally been more severe, physical and mental damage was shown through testimony presented in court, and the acts took place over long periods of time, such as over several months or years. See, e.g., State v. Woodcock, 922 S.W.2d 904 (Tenn. Crim. App. 1995); State v. Hallock, 875 S.W.2d 285 (Tenn. Crim. App. 1993); State v. Hunter, 926 S.W.2d 744 (Tenn. Crim. App. 1995); State v. Taylor, 739 S.W.2d 227 (Tenn. 1987). In contrast, the case sub judice consisted of one act with two victims that was the result of contact with the girls within a week. The State elicited no testimony regarding how the incident affected the victims. This is akin to State v. Hayes, 899 S.W.2d 175 (Tenn. Crim. App. 1995), in which two acts of sexual battery occurred over a two-month period and in which this Court found consecutive sentencing unsupported by the evidence.

Given all of the circumstances presented in this case, concurrent sentences for the aggravated sexual battery convictions are appropriate in relation to the severity of the offenses and are the least severe measures necessary to deter the defendant's future criminal conduct, to protect society and to deter others who are similarly situated and may be likely to commit similar offenses. See Tenn. Code Ann. §§ 40-35-102 and -103.

Therefore, we modify the sentences to reflect that they be served concurrently, and remand to the trial court for entry of an order consistent with this opinion.  In all other respects, the judgment is affirmed.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
DAVID G. HAYES, JUDGE

_____
THOMAS T. WOODALL, JUDGE