# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 15, 2005 Session

## STATE OF TENNESSEE v. SHAWNTA LAMONT MARSH

**Appeal from the Circuit Court for Bedford County**
**Nos. 15406, 15407, & 15408      Charles Lee, Judge**

---

**No. M2004-02248-CCA-R3-CD - Filed June 8, 2005**

---

The defendant, Shawnta Lamont Marsh, pled guilty to six counts of sale or delivery of cocaine over .5 grams. The trial court merged all but three of the convictions and ordered the defendant to serve consecutive sentences of eight years and one month for each offense. The effective sentence is twenty-four years and three months. In this appeal of right, the defendant contends that the trial court erred by ordering consecutive sentencing. The judgments of the trial court are affirmed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Fannie J. Harris, Nashville, Tennessee, for the appellant, Shawnta Lamont Marsh.

Paul G. Summers, Attorney General & Reporter; Preston Shipp, Assistant Attorney General; and Ann L. Filer and Michael D. Randles, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

At the plea acceptance hearing, the parties stipulated that a confidential police informant made several controlled purchases of crack cocaine from the defendant. The first offense occurred on May 2, 2003, when the informant purchased .6 grams of cocaine from the defendant. Three days later, the informant purchased .7 grams of crack cocaine from the defendant. Finally, on May 7, the informant purchased .9 grams of crack cocaine from the defendant. The defendant was charged with one count of sale and one count of delivery for each of the three transactions.

Lisa Prosser, an officer for the Board of Probation and Parole, prepared the presentence report on the defendant, who was twenty-five years of age at the time of sentencing. Her investigation established that the defendant had three prior drug convictions: one for possession of marijuana in 2000 and two for sale of cocaine in 2001. The defendant received concurrent eight-year

sentences for the cocaine convictions. He was on probation for those crimes at the time of the offenses in this case. Although no warrant had been filed, Ms. Prosser testified that the defendant had left Giles County in violation of his probation. The defendant's version of the events was as follows:

> Tracy McKlentha was my girl friend[.] She ask me could I get her some drugs so I went and brought some with my money and she paid me back. I didn't [know] that she got into some trouble by her being my girlfriend[.] I didn't think she would do me like that[.] The reason why she came to me is because I told her I didn't want her out in the streets because most people I know do things for drugs and I didn't want her doing so I got it for her.

> After we had broke up that's when I'd foun[d] out she was in trouble but it was to[o] late[.] Tim Miller had served 3 warrants on me of resale[.] I knew better than mess[ing] with the drugs but when you care about someone sometime you take chances to please them so they wouldn't go out on the streets to do things.

At the sentencing hearing, Tim Lane, the director of the 17th Drug Task Force, testified that crack cocaine was "the number one problem in [the] judicial district." He stated that "it has been shown[] that incarceration and putting [repeat drug offenders] in jail is the only way to really stop them." He stated that after the arrest, the defendant gave the following oral statement to Tim Miller, another agent on the task force:

> On July 19, 2003, at the Bedford County Jail following the [d]efendant's arrest, [the defendant] waived his Miranda rights and answered the questions propounded by Asst. D.T.F. Director Tim Miller.

> [The defendant] stated that he first became involved in the illegal distribution of crack cocaine in 2000 while living in Pulaski, Tennessee. He purchased crack cocaine from "Fruity" in Nashville. The total amount was estimated at 4 ounces. Ultimately, [the defendant] was arrested in Giles County with 52 grams of crack. He was charged, convicted and received an 8 year sentence. After 6 months' incarceration, he was paroled.

> In July, 2001, a couple of weeks after being paroled, [the defendant] moved to Nashville. He re-entered the crack distribution business in January, 2003. He purchased crack from Michael Wilson (Butter) [one quarter-ounce per month for several months] and Willy Armstrong (Big Willy) [$50 to $100 worth every 2 weeks until arrest]. Wilson was paid $100 per purchase, but "doubled him up," i.e., provided the cocaine for half price.

> Marsh regularly sold crack to: Ty; Karen Anderson; Debra and Todd Russell.

Donna Ruth Marsh, the defendant's mother, testified that the defendant worked at the Vanderbilt University Hospital for three years and that he was a "good father . . . [and] good son." She acknowledged, however, that the defendant was fired from the hospital for falling asleep on the job and that he had not paid child support since then.

In sentencing the defendant, the trial court applied the following enhancement factors: (2) that the defendant has a previous history of criminal convictions or criminal behavior in addition to that necessary to establish the appropriate range; (9) that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; (14) the felony was committed while the defendant was on probation from another felony. See Tenn. Code Ann. § 40-35-114(2), (9), (14). In mitigation, the trial court gave "some consideration" to the defendant's having entered pleas of guilt and "take[n] responsibility" for the crimes. See Tenn. Code Ann. 40-35-113(13). The trial court concluded that the defendant was eligible for consecutive sentencing because he was on probation at the time of the offense:

> [T]he sentence which the [c]ourt will give the defendant on each individual sentence will be less than what the [c]ourt would normally give. But the [c]ourt is going to apply the consecutive sentencing provisions to arrive at a sentence which would be . . . what the [c]ourt feels would be appropriate.
>
> The [c]ourt feels that consecutive sentencing is justified in this case not only because of the statutory grounds, but in this case what more is there when you have given someone an opportunity to change their ways, when they have apparently been engaged substantially in at least possession of drugs for sale and all they do is change locations and continue in their course of conduct.

The trial court ordered, however, that the sentences be served concurrently with the defendant's prior Giles County sentences.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating

or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

> [C]onsecutive sentences should not routinely be imposed . . . and . . . the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved.

Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[1] exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of

---

[1] The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation;

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense," Tenn. Code Ann. § 40-35-102(1), and "no greater than that deserved" under the circumstances, Tenn. Code Ann. § 40-35-103(2); State v. Lane, 3 S.W.3d 456 (Tenn. 1999).

In our view, the trial court did not abuse its discretion by ordering consecutive service of the sentences. The defendant concedes that he was on probation in Giles County at the time of the offenses. See Tenn. Code Ann. § 40-35-115(b)(6). In fact, the defendant was serving probation for prior sale of cocaine convictions. Although the defendant argues that that criteria is applicable only "as to whether . . . the sentence should be consecutive or concurrent to the probation case," this court has held otherwise. "[C]onsecutive sentences may be imposed any time the defendant is convicted of more than one criminal offense; the offenses do not necessarily have to arise from the same proceeding." State v. Moore, 942 S.W.2d 570 (Tenn. Crim. App. 1996). The defendant also contends that the trial court erred by applying enhancement factor (9) that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community. Lisa Prosser testified that the defendant had absconded from Giles County notwithstanding the failure on the part of the state to issue a violation warrant. Although the defense introduced testimony implying that the defendant may have been in custody in Bedford County, thereby explaining his absence from Giles County, it was little more than insinuation. In our view, the evidence does not preponderate against the findings of the trial court. Based on the record before us, the defendant's effective sentence of twenty-four years, three months is appropriate for the seriousness of the offenses and no greater than that deserved by the defendant. See Tenn. Code Ann. §§ 40-35-102(1), 40-35-103(2).

Accordingly, the judgments of the trial court are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE

-5-