IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 13, 2026 Session

**STATE OF TENNESSEE v. CHRISTIAN SANDERSON**

**Appeal from the Circuit Court for Rutherford County
Nos. 89816, 89819   Barry R. Tidwell, Judge**

_____

**No. M2025-00827-CCA-R3-CD**

_____

Defendant, Christian Sanderson, pled guilty in two separate cases to four counts of attempted aggravated sexual battery.  As part of the negotiated agreement, Defendant agreed to a five- to six-year sentence of incarceration on each count, with the trial court to determine whether to impose consecutive sentences.  The trial court ordered Defendant to serve four consecutive six-year sentences, for an effective sentence of twenty-four years.  On appeal, Defendant argues that the trial court abused its discretion by ordering complete consecutive sentencing.  Following a review of the entire record, the briefs and arguments of the parties, and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

Michael J. Flanagan, Nashville, Tennessee, for the appellant, Christian Sanderson.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; Jennings H. Jones, District Attorney General; and Hugh Ammerman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

In April 2023, a detective with the Rutherford County Sheriff's Office filed a petition of delinquency against Defendant in the Rutherford County Juvenile Court, alleging two counts of rape of a child and two counts of sexual battery against the victim

R.G.F.[1]  On May 3, 2023, the State filed a petition to transfer the case to adult court. Following a hearing, that petition was granted.  Subsequently, a Rutherford County grand jury indicted Defendant for two counts of rape of a child and two counts of sexual battery against R.G.F. in case 89816, and for one count of rape of a child and three counts of aggravated sexual battery against A.K. in case 89819.

Defendant pled guilty in counts three and four of case 89816 and in counts two and three of case 89819 to the lesser-included offenses of attempted aggravated sexual battery, Class C felonies.  As part of the negotiated agreement, Defendant agreed to serve five- to six-year sentences of incarceration for each conviction, with the trial court to determine the exact length of sentence for each count and whether to impose consecutive sentences.  The agreement also stated that Defendant would be subject to the requirements of the sex offender registry and community supervision for life.  The remaining counts were dismissed.

The relevant facts, as presented by the State at the plea hearing, are as follows:

The proof would be starting with the case that was set for trial, 89816, that the Defendant . . . during a period beginning April the 27th, 2015, and ending December the 12th, 2016, did engage in multiple acts of sexual abuse of [R.G.F.] who was a minor at the time of these offenses under the age of 13 years old.

That among these acts of abuse are included two incidents.  One where the Defendant and the victim were at a first birthday party in a swimming pool at an event venue here in Rutherford County.

And while in the pool with the victim, the Defendant put his hand down her bathing suit and touched her private area and also took her hand and put it on his private area while they were in the pool together.

Another incident that occurred in that case includes a time when the victim was at her own home and the Defendant who played ball with her little brother was over at the house visiting.

The victim went in to take a shower upstairs.  The Defendant came into the bathroom, pulled the shower curtain, touched her breasts.  And he touched her genitalia on that date.

---

[1] Because it is the policy of this court to protect the identity of minor victims, we will identify them by their initials.

In the other case, 89819, had that case gone to trial, the proof would be that during the period beginning April 25th to April 27th, 2015 and ending April 27th, 2019, the Defendant touched [A.K.], a minor victim in that case who was his cousin by marriage, in a sexual manner once during . . . the game hide and seek at the victim's residence when she was hiding in the desk. He found her and put his hand down her pants and touched her on her private area.

Another incident that occurred would have been in the Defendant's car when he was taking the victim to the store. The victim's aunt had put her in the back seat of the Defendant's vehicle. He got her out and put her in the front seat.

On that occasion, he put his hand again down the victim's pants and touched her privates. The victim in that case believes that she was in second grade around seven or eight years old when all of those events occurred.

Defendant agreed that the facts, as summarized by the State, were "substantially true" and that there was a factual basis to support his plea. The court accepted Defendant's guilty plea.

At the sentencing hearing, the State introduced victim testimony and the presentence report. A.K., the victim in case 89819, testified that the abuse began when she was in second grade and continued until she was about eleven years old. She stated, "I remember it happening like every time I seen him." In her victim impact statement, which she read to the court, she said, "From a very young age, [Defendant] sexually assaulted me leaving me with deep wounds that I still feel to this day. For years I hated myself, felt disgusted, and felt disgusting for not being able to stop [Defendant]. This filled me with anger and sadness, emotions I deal with every day due to [Defendant's] actions."

R.G.F., the victim in case 89816, testified that Defendant was a close family friend and "[had] been sexually assaulting [her] from the age of 6 up until [she] was 15," including incidents during family gatherings and trips. She realized the trauma caused by the abuse was the reason for her "seemingly random panic attacks." She emphasized the lasting harm and urged the court to impose a severe sentence, stating, "[Defendant] is not only a repeating offender, he is mentally unwell. He needs help. And he won't stop assaulting young girls until he's forced to." Additionally, R.G.F.'s mother testified that her daughter required years of counseling, at significant personal expense, and implored the court to "keep [Defendant] off of the streets for as long as possible so we don't have to see him again. . . . Because it's not a matter of if. It is when he gets out it will happen again."

A.K.S. was not a victim in the indicted cases against Defendant but testified about abuse she endured from Defendant. The record reflects that Defendant was not charged with the sexual abuse of A.K.S. because he was under the age of fourteen when that abuse occurred. Defendant began sexually abusing A.K.S. when she was six years old and continued until she was approximately twelve. She described at least five specific incidents and stated, "I feel disgusting . . . it's embarrassing . . . he was a cousin by marriage. You don't do that to family." Additionally, she explained, "[Defendant] took away my sense of safety and trust. And I have had to live with the pain and trauma of [his] actions. [He] generally ruined the best years of my life that I will never get back."

The State argued that consecutive sentences were warranted under Tennessee Code Annotated section 40-35-115(b)(5) because Defendant was convicted of two or more statutory offenses involving sexual abuse of a minor with aggravating circumstances of the extended time span of the offenses, multiple victims, and severe residual harm: "[F]rom a very young age, the Defendant has committed himself to committing sex crimes against children. Despite being taken to counseling. Despite people becoming aware of it. He persisted in this behavior." The State asked the court to sentence Defendant to six years on each count with each to run consecutively for a total effective sentence of twenty-four years to serve.

Defendant's father, John Sanderson, testified that the offenses occurred when Defendant "was a child." Mr. Sanderson said that Defendant had expressed remorse and had accepted responsibility for his actions. Mr. Sanderson described Defendant as a hardworking mechanic who "had his own business" and was a "very loving, caring father of two wonderful kids." He further noted that Defendant had "a lot of support" from family and friends.

Defendant argued that the court should impose concurrent sentences and emphasized that the offenses occurred when Defendant was a juvenile. Defendant asked the court to apply mitigating factor (6) because at the time of the offenses, Defendant "lacked substantial judgment" due to his youth. T.C.A. § 40-35-113(6). Additionally, Defendant noted that his risk assessment was "moderate-low" and that lifetime registration and felony convictions constituted significant punishment.

After considering the evidence, victim statements, presentence report, and statutory factors, the trial court imposed six years for each conviction, to be served consecutively, for an effective sentence of twenty-four years, along with inclusion on the sex offender registry and community supervision for life.

In determining the length of Defendant's sentences, the court gave "great weight" to enhancement factor (1), finding that "the Defendant has a previous history of criminal

behavior . . . very extensive." *See* T.C.A. § 40-35-114(1). The court explained that Defendant's history included multiple unindicted sexual assaults and prior juvenile adjudications, and added, "[C]learly Factor 1 applies[;] if ever there was a case this is it." The court cited case law permitting consideration of criminal behavior not resulting in conviction and emphasized that the record reflected "five to eight victims" over the years based on the testimony and presentence report. *See State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000) (citing *State v. Carico*, 968 S.W.2d 280, 287 (Tenn.1998)). The court also noted that Defendant's criminal activity "was large in amount of time, space, and scope."

The court discussed and rejected Defendant's request for application of mitigating factor (6) regarding youth, explaining:

> [T]he court has certainly heard arguments in really all manner of cases on Factor 6. And there is no question that Factor 6 applies in some cases.

> However, I'm not going to consider Factor 6 in this case because of several reasons. The first is the sheer brea[d]th of the varied victims, the years that this occurred.

> . . .

> I don't believe when he was in his middle teens that he lacked substantial judgment committing the offense. Nor when he was younger than that. There is just too many.

> . . .

> These are many, many sexual assaults with many different victims. Based on the proof I have before me, I do not believe that he lacked substantial judgment in committing the offenses as it should say. One time, maybe. A couple of times, a single victim, maybe I will look at it harder.

> But the number of victims and the number of instances we have here do not support in the Court's position applying even minimally Factor 6 to the mitigating factors.

*See* T.C.A. § 40-35-113(6).

Turning to consecutive sentencing, the court found that the statutory criteria of Tennessee Code Annotated section 40-35-115(b)(5) were satisfied. Defendant was convicted of two or more offenses involving sexual abuse of a minor; the court noted that

two victims were Defendant's cousins and one was a close family friend, the offenses occurred over a period of at least seven years, and the nature and scope of the offenses were "extensive." T.C.A. § 40-35-115(b)(5). Additionally, the court emphasized the extensive "residual and mental damage" suffered by the victims:

> And I want to make sure the record is clear. As I have watched these witnesses testify, this will certainly be a case where the cold, written record will not give any indication of the emotion, great emotion of the angst of these three young ladies who feel, have felt, and most likely will feel in the future.

> Many tears shed today. Stops and starts in testimony as they gather themselves and gather their emotions as they testify as to these assaults.

Finally, the court made explicit findings that consecutive sentencing was necessary to protect the public against further criminal conduct by Defendant and was proportionate to the severity of the offenses. The court stated, "I find that an extended sentence is necessary. . . . [T]he nature of the offenses is great. The number of victims is great. The time period over which these offenses occurred is great. The damage to these survivors is great. . . . I think the record fully supports that."

## Analysis

On appeal, Defendant argues that the trial court abused its discretion by ordering complete consecutive sentencing of his four convictions and that his twenty-four-year effective sentence is excessive because the offenses occurred when he was a juvenile. The State contends that based on the record, the trial court did not abuse its discretion in imposing consecutive sentences. We agree with the State.

When reviewing a trial court's decision to impose consecutive sentences, this Court applies an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Pollard*, 432 S.W.3d 851, 859-62 (Tenn. 2013); *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). So long as the trial court articulates reasons for ordering consecutive sentences and establishes at least one of the statutory grounds under Tennessee Code Annotated section 40-35-115(b), the sentences will be presumed reasonable and upheld absent an abuse of discretion. *Pollard*, 432 S.W.3d at 861-62. "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)). Under the abuse of discretion standard, an appellate court is not permitted to substitute its judgment for that of the trial

court. *State v. Sihapanya*, 516 S.W.3d 473, 475 (Tenn. 2014). On appeal, the party challenging the sentence bears the burden of establishing that the sentence is improper. *State v. Branham*, 501 S.W.3d 577, 595 (Tenn. Crim. App. 2016); T.C.A. § 40-35-401, Sentencing Comm'n Cmts.

Tennessee Code Annotated section 40-35-115(b) provides that the trial court may impose consecutive sentences if it finds by a preponderance of the evidence that the defendant is an offender whose record of criminal activity is extensive or has been convicted of two or more statutory offenses involving sexual abuse of a minor. T.C.A. § 40-35-115(b)(2), (5). In *State v. Perry*, the Tennessee Supreme Court clarified a nonexclusive set of considerations for what constitutes extensive criminal activity: (1) amount of criminal activity, (2) time span of criminal activity, (3) frequency within that span, (4) geographic span, (5) multiplicity of victims, and (6) any other fact illuminating whether the record is considerable or large in amount, time, space, or scope. 656 S.W.3d 116, 128-31 (Tenn. 2022). When a defendant is convicted of two or more statutory offenses involving sexual abuse of a minor, consideration is given to "aggravating circumstances arising from the relationship between the defendant and the victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual physical and mental damage to the victim or victims." *State v. Taylor*, 739 S.W.2d 227, 230 (Tenn. 1987) (adopted and codified in T.C.A. § 40-35-115(b)(5)).

Additionally, general sentencing principles require that the total length of the sentence must be justly deserved in relation to the seriousness of the offense(s) and must be no greater than that deserved under the circumstances. T.C.A. §§ 40-35-102(1), 103(2); *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002); *Pollard*, 432 S.W.3d at 861-63.

Here, the court expressly found that Defendant's criminal activity was "excessive," encompassing multiple victims over many years and numerous unindicted instances described in the presentence report and the victims' testimonies. Additionally, Defendant was convicted of two or more statutory offenses involving sexual abuse of minors with aggravating circumstances, including familial relationships, the prolonged time span of undetected conduct, the locations of assaults thought to be safe, and the significant residual mental damage the victims described. *See* T.C.A. § 115(b)(5); *Taylor*, 739 S.W.2d at 230.

The trial court's findings align with the *Perry* factors. Three victims testified to repeated abuse over seven years, and the presentence report referenced additional victims. *See Perry*, 656 S.W.3d at 129-31. *Perry* also confirms that a "record of criminal activity" may be shown by the scope and pervasiveness of the current offenses, including unadjudicated conduct proven at sentencing. *See id.* at 131. The court also relied on Tennessee Code Annotated section 40-35-115(b)(5): the victims were elementary-aged children, two cousins and one family friend, and the abuse occurred in homes, at family

gatherings, and other settings presumed safe. *See Taylor*, 739 S.W.2d at 230. Each victim described lasting emotional trauma, which the court found to be great. These circumstances, combined with the time span and frequency of abuse, support consecutive sentencing. *See Pollard*, 432 S.W.3d at 862.

Defendant argues the twenty-four-year effective sentence is excessive because the offenses occurred when he was a juvenile. However, the trial court explicitly considered and rejected Defendant's youth as a mitigating factor, noting the length, severity, and persistence of conduct, the number of victims, and that later instances occurred when Defendant was in his mid-teens and older.

The trial court articulated its reasons and established multiple statutory grounds for imposing consecutive sentences under Tennessee Code Annotated section 40-35-115(b). Accordingly, its decision is entitled to a presumption of reasonableness. Based on the record, the trial court did not abuse its discretion in ordering consecutive sentences.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgments of the trial court.


S/*Jill Bartee Ayers*
JILL BARTEE AYERS, JUDGE